**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **WILLIAM WHITTMAN,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civ. No. DLB-24-1719** |
| **MGM NATIONAL HARBOR, LLC,** | * | |
| **Defendant.** | * | |

**<u>MEMORANDUM OPINION</u>**

William Whittman, who is proceeding without counsel, sued MGM National Harbor, LLC ("MGM") in state court for breach of contract, unlawful retaliation under the First Amendment, intentional and negligent infliction of emotional distress, violations of the Maryland Consumer Protection Act ("MCPA") and federal consumer protection laws, and violations of federal and state public accommodation laws. MGM removed the case to this Court. Pending are Whittman's motion to remand and MGM's motion to dismiss. The motion to remand is denied. The motion to dismiss under Rule 12(b)(3) is denied, and the motion to dismiss under Rule 12(b)(6) is granted in part and denied in part. Whittman's federal claims are dismissed without prejudice, and his state law claims are remanded to the Circuit Court for Prince George's County.

**I.    Relevant Background**

On April 15, 2024, William Whittman sued MGM in the Circuit Court for Prince George's County, Maryland. ECF 3. The following allegations are taken from Whittman's complaint.

MGM offered Whittman complimentary lodging in its hotel on March 29 and 30, 2024. *Id.* ¶ 8. On the evening of March 30, Whittman attended a "drawing event" at MGM. *Id.* ¶¶ 9, 11. On Whittman's account, the event was poorly organized. *Id.* ¶ 13. Patrons had to stand in long lines to claim their prizes, which made it difficult for patrons to claim their prizes, "especially for the

elderly or those with mobility challenges." *Id.* ¶¶ 13–15, 20. MGM's poor planning created "undue pressure and stress on all participants," including patrons in wheelchairs. *Id.* ¶ 39.[1] MGM broadcasted the names of winners at a low volume that patrons could not hear over the sounds of the music and slot machines. *Id.* ¶ 36. And the event started after the advertised time, which confused patrons. *Id.* ¶ 53–54.

Frustrated by the long lines, muted announcements, and other planning failures, Whittman sent several text messages to his MGM "host," Denis, during the event. *Id.* ¶ 51. Whittman told Denis that the MGM management was "doing a very p[o]or job." *Id.* He sent two more texts to Denis criticizing management that evening. *Id.* ¶ 66, 76.

The next morning, MGM banned Whittman from the premises. *Id.* ¶ 82. MGM's security officers informed Whittman that MGM imposed the ban because Whittman damaged an MGM slot machine several weeks earlier. *Id.* ¶ 93. Whittman then texted Denis. *Id.* ¶ 106. Whittman told Denis that he did not know whether he had broken a machine. *Id.* Still, he "d[id] not deny" that he might have done so "unintentionally." *Id.* He asked if Denis could help remove the ban. *Id.*

On April 7, Whittman emailed MGM to request a copy of his win and loss statement so he could file his taxes. *Id.* ¶ 108. Denis responded that Whittman could not retrieve a copy of the statement in person. *Id.* ¶ 114. Instead, Whittman would need to access the statement in his online MGM account and print it. *Id.* ¶ 115. Denis also told Whittman that he needed to return to MGM to pay for the broken machine. *Id.* ¶ 120.

On April 10, Whittman emailed Denis asking him to reconsider the ban. *Id.* ¶ 132. Separately, Whittman asked Denis whether he could use his "self-comp funds" at restaurants

---

[1] Whittman does not allege that he is elderly, uses a wheelchair, or has other mobility challenges.

external to the casino. *Id.* ¶ 127. MGM responded to Whittman the next day, informing him how much he owed for the broken machine and asking him how he wished to proceed. *Id.* ¶ 133.

Whittman repeated his request for his win and loss statement. *Id.* ¶ 137. He also asked to confirm that he would not "face any legal trouble" if he used his comp funds at the restaurants and if he entered the casino to retrieve his win and loss statement. *Id.* Denis responded that MGM could not provide him with the statement and encouraged Whittman to get the statement online. *Id.* ¶ 143. In response, Whittman expressed his frustration to Denis. *Id.* ¶ 149. On Tax Day, April 15, Whittman attempted to access his win and loss statement on the MGM website but could not. *Id.* ¶ 159. Whittman emailed MGM to request his statement several times that morning. *Id.* ¶ 161, 166, 189.

That same day, Whittman filed this lawsuit in the Circuit Court for Prince George's County. ECF 3. He filed his complaint and then an amended complaint on April 17, 2024. ECF 1-2, at 3. He alleges state law violations, unlawful retaliation under the First Amendment, and violations of federal consumer protection laws and public accommodation laws. Whittman served MGM with the amended complaint and summons on May 14, 2024. ECF 1, at 1. MGM timely filed a notice of removal on June 13, 2024 on the basis of federal question jurisdiction. *Id.* On June 20, 2024, Whittman moved to remand the case to state court, ECF 6, and MGM moved to dismiss his complaint pursuant to Rules 12(b)(3) and 12(b)(6), ECF 7. The motions are fully briefed. ECF 7-1, 12-1, 13, 14, 15. A hearing is not necessary. *See* Loc. R. 105.6 (D. Md. 2023).

## II.   Discussion

### A.  Motion to Remand

Federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. When a plaintiff files such

an action in state court, the case "may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The case is removable if there is a federal question on the face of the complaint. *Lontz v. Tharp*, 413 F.3d 435, 439 (4th Cir. 2005). If the plaintiff believes the case is not removable, the plaintiff may move to remand the case to state court. *See Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). The party seeking removal bears the burden of proving the Court has jurisdiction over the removed action. *See id.* The Court "strictly construe[s] removal jurisdiction" and must remand the case "[i]f federal jurisdiction is doubtful." *Id.*

Whittman asks the Court to remand the case because the Court does not have subject matter jurisdiction over his complaint. As he sees it, the federal questions are only elements of his state law claims, so "federal jurisdiction cannot be invoked." ECF 6, at 2. Whittman is correct that if federal question jurisdiction under § 1331 is premised on a state law claim, the federal question embedded in the claim must be "actually disputed and substantial." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). But Whittman overlooks the fact that he alleges two violations of federal law that are independent of any state law claims.

First, Whittman asserts, in Count Three, a claim for unlawful retaliation under the First Amendment. ECF 3, ¶¶ 205–07. He alleges that MGM retaliated against him for exercising his right to free speech by "banning [him] from the premises and withholding essential tax documents." *Id.* ¶ 207. This alleged constitutional violation is not embedded in a state law claim. In fact, Whittman does not refer to a state law claim in this part of his amended complaint. This claim raises a federal question and forms the basis for the Court's subject matter jurisdiction under § 1331.

Second, Whittman asserts, in Count Seven, violations of "Public Accommodation Laws." *Id.* ¶¶ 217–19. He alleges a violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, which prohibits discrimination in places of public accommodation based on race, color, religion, or national origin, § 2000a(a), and a violation of the Maryland Public Accommodations Act, Md. Code. Ann., State Gov't §§ 20-301 to 20-306. *See* ECF 3, ¶¶ 217–19. Whittman alleges that "the defendants' unfair discrimination against the plaintiff and restriction of his access to benefits and services offered by the casino clearly violate public accommodation laws." *Id.* ¶ 219. His Title II claim is not a "hypothetical federal issue," as Whittman urges, ECF 6, at 3. It is a standalone cause of action under federal law. The Title II claim raises a federal question and forms another basis for the Court's subject matter jurisdiction under § 1331.

Because the Court has federal question jurisdiction over this case, the Court denies Whittman's motion to remand.[2]

### B.  Motion to Dismiss under Rule 12(b)(3)

MGM moves to dismiss Whittman's complaint under two Federal Rules of Civil Procedure: Rule 12(b)(3) and Rule 12(b)(6). The Court begins with the motion under Rule 12(b)(3).

Under Rule 12(b)(3), a court may dismiss a complaint for improper venue. On a Rule 12(b)(3) motion, the Court may consider evidence outside of the pleadings. *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 549–50 (4th Cir. 2006). To defeat a Rule 12(b)(3)

---

[2] Whittman alludes to a claim under federal consumer protection laws in Count Five of his complaint. ECF 3, ¶¶ 212–13. Because it is not clear that Whittman intended to bring a federal consumer protection claim, and because Counts Three and Seven clearly present federal questions, the Court does not consider whether Count Five provides yet another ground for federal question jurisdiction.

motion, a plaintiff must make a prima facie showing of proper venue. *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004).

MGM argues that the proper venue for this case is Nevada, not Maryland, because Whittman agreed to arbitrate all disputes against MGM in Clark County, Nevada. ECF 7-1, at 7 (arbitration agreement's forum selection clause). On the basis of the forum selection clause in the parties' apparent arbitration agreement, MGM seeks dismissal under Rule 12(b)(3).

MGM's motion is, as another district court put it, "a nonstarter." *Meridian Imaging Sols., Inc. v. OMNI Bus. Sols. LLC*, 250 F. Supp. 3d 13, 15 (E.D. Va. 2017). In *Atlantic Marine Construction Co. v. U.S. District Court for the Western District of Texas*, the Supreme Court held that Rule 12(b)(3) is not "[a] proper mechanism[] to enforce a forum-selection clause." 571 U.S. 49, 61 (2013). Instead, "Rule 12(b)(3) allow[s] dismissal only when venue is 'wrong' or 'improper.' Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause." *Id.* at 55.

Before the Supreme Court's decision in *Atlantic Marine*, the Fourth Circuit had instructed courts to treat a Rule 12(b)(3) motion to dismiss based on a forum-selection clause in an arbitration agreement as a motion to dismiss for improper venue. *Sucampo*, 471 F.3d at 550. However, after *Atlantic Marine*, the Fourth Circuit acknowledged that the Supreme Court's decision "clarified that a party may not seek to enforce a forum selection clause by moving to dismiss for improper venue . . . ." *BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 470 n.4 (4th Cir. 2018), *as amended* (Mar. 27, 2018).

Since *Atlantic Marine*, district courts generally have denied motions to dismiss under Rule 12(b)(3) when the ground for the motion is a forum selection clause in an arbitration agreement.

6

*See Meridian Imaging*, 250 F. Supp. 3d at 16 (denying Rule 12(b)(3) motion as foreclosed by *Atlantic Marine* but granting motion to compel arbitration); *Green v. First Student, Inc.*, Civ. No. 2:22-259-RMG, 2023 WL 11941013, at *1 (D.S.C. Jan. 10, 2023) (finding Rule 12(b)(3) an "improper procedural mechanism" to enforce an arbitration provision); *Metro Fibernet, LLC v. Johnson Controls, Inc.*, 3:21-cv-59, 2022 WL 1492514, at *2–3 (S.D. Ind. Apr. 22, 2022) (same); *see also Rogers-Rouzier v. Am. Queen Steamboat Operating Co., LLC*, 104 F.4th 978, 984 (7th Cir. 2024) (holding that "Rule 12(b)(3) is not the proper means of enforcing an arbitration agreement" after *Atlantic Marine*); *Barach v. Sinclair Media III, Inc.*, 392 F. Supp. 3d 645, 649–50 (S.D. W. Va. 2019) (recognizing that *Atlantic Marine* bars a Rule 12(b)(3) motion to dismiss based an arbitration agreement's forum selection clause, but granting motion to compel arbitration). *But see Stone v. Wells Fargo Bank, N.A.*, 361 F. Supp. 3d 539, 548–50, 558 (D. Md. 2019) (granting Rule 12(b)(3) motion to dismiss because of arbitration agreement, when defendant had filed a motion to compel arbitration, but not discussing *Atlantic Marine*). This Court agrees that *Atlantic Marine* forecloses MGM's Rule 12(b)(3) motion.

MGM cites *Choice Hotels International, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707 (4th Cir. 2001), but that case is distinguishable. In *Choice Hotels*, the Fourth Circuit held that, when a party seeks enforcement of an arbitration agreement, "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Id.* at 709–10. But here, MGM did not file a motion to compel arbitration. So it has not sought enforcement of the arbitration agreement. That Whittman's claims may be subject to arbitration is not enough to warrant dismissal; a party may waive his right to arbitrate under the Federal Arbitration Act. *See Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 241 (4th Cir. 2017).

MGM's analogy to *Arctic Glacier U.S.A., Inc. v. Principal Life Insurance Co.*, No. PX 16-3555, 2017 WL 2629043 (D. Md. June 19, 2017), fails for the same reason. In *Arctic Glacier*, the action began when the petitioner filed a petition to compel arbitration, pursuant to section 4 of the Federal Arbitration Act, in the District of Maryland. *Id.* at *1. The court discussed the proper venue to adjudicate the petition. *Id.* at *7. Because the parties agreed to arbitrate their claims in Nebraska, the court held that only the District of Nebraska could adjudicate the petition. *Id.* at *8. The court transferred the petition to the District of Nebraska. *Id.* at *9.

Again, MGM has not filed a petition or motion to compel arbitration. Even if, as MGM argues, this Court could not compel arbitration in another jurisdiction, MGM has not explained why it could not file a standalone petition to compel arbitration in the District of Nevada or a motion to compel arbitration in this Court and an accompanying request to transfer the case to Nevada. MGM's chosen approach—a motion to dismiss under Rule 12(b)(3)—is not the proper mechanism to enforce the arbitration agreement.

MGM's Rule 12(b)(3) motion is denied.[3]

### C.  Motion to Dismiss under Rule 12(b)(6)

MGM's motion to dismiss under Rule 12(b)(6) fares better than its Rule 12(b)(3) motion. Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive the challenge, the opposing party must have pleaded

---

[3] MGM's motion appears to fail for another reason. When a defendant removes an action from state court to federal court, "venue is governed exclusively by the federal removal statute, 28 U.S.C. § 1441(a)." *Am. Ins. Mktg. Corp. v. 5 Star Life Ins.*, 958 F. Supp. 2d 609, 613 (D. Md. 2013). MGM removed this action to the federal district court "for the district and division embracing the place" where Whittman filed his complaint: Prince George's County, Maryland. *See Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 666 (1953). Federal venue is proper under § 1441(a).

facts demonstrating it has a plausible right to relief from the Court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ is the Answer Ministries, Inc. v. Baltimore County*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765 (4th Cir. 2022). But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 212 (4th Cir. 2019)). The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

The Court must construe Whittman's pro se complaint liberally. *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023). But "liberal construction does not require [the Court] to attempt to 'discern the unexpressed intent of the plaintiff.'" *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir.

2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)). Instead, the Court need only "determine the actual meaning of the words used in the complaint." *Id.* Thus, a pro se complaint "still 'must contain enough facts to state a claim for relief that is plausible on its face.'" *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (quoting *King v. Rubenstein*, 825 F.3d 206, 212, 214 (4th Cir. 2016)).

The Court begins with Whittman's federal claims.

### 1.   Count Three: First Amendment

Whittman claims MGM unlawfully retaliated against him by banning him from its property and refusing to provide him a copy of his win and loss statement. ECF 3, ¶ 207. According to Whittman, MGM retaliated against him because he exercised his free speech rights when he expressed his frustrations about the drawing event to MGM. *Id.* ¶ 205.

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions" because of that person's constitutionally protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). "If an official takes adverse action against someone based on that forbidden motive, and 'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences,' the injured person may generally seek relief by bringing a First Amendment claim." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman*, 547 U.S. at 256).

However, "the Free Speech Clause prohibits only *government* abridgment of speech," not "*private* abridgment of speech." *Manhattan Community Access Corp. v. Halleck*, 587 U.S. 802, 808 (2019). Thus, Whittman must allege that the government is responsible for the unlawful retaliation. *See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).

Whittman cannot. MGM is a private corporation. Whittman has not alleged that MGM acted under color of law when it banned him from the premises and denied him his tax document. Whittman has failed to state a First Amendment claim. Count Three is dismissed.

### 2. Count Seven: Title II

Whittman also claims that MGM discriminated against him in violation of Title II of the Civil Rights Act of 1964 by banning him from the casino. Title II entitles all people "to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). A place of public accommodation includes "place[s] of exhibition or entertainment," *id.* § 2000a(b), such as casinos, *see Hodge v. Cordish Co.*, No. ELH-17-254, 2017 WL 3007069, at *4 (D. Md. July 14, 2017).

Whittman generally alleges that MGM discriminated against him, but he does not allege that he is a member of a protected class or that MGM discriminated against him because of his membership in a protected class. *See Okudo v. Caesars License Co.*, No. ELH-20-3434, 2021 WL 4133717, at *4 (D. Md. Sept. 10, 2021) (dismissing Title II claim because plaintiff failed to allege that casino discriminated against him because of his race, color, religion, or national origin). Whittman's Title II claim in Count Seven is dismissed.

### 3. Count Five: Federal Consumer Protection Laws

Whittman seems to suggest that MGM violated federal consumer protection laws when it withheld his win and loss statement and denied him the use of his comp funds. His complaint is not a model of clarity on this point. Citing *Federal Trade Commission v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015), Whittman says the case "discusses the FTC's authority to

regulate unfair and deceptive practices in commerce," which he alleges "provid[es] additional support for [his] claim." ECF 3, ¶ 212.

If Whittman intended to raise a claim under federal consumer protection laws, he has failed. Whittman does not allege how MGM's failure to provide him with his tax documents or denial of access to his comp funds violated any federal consumer protection law. Further, the Federal Trade Commission Act cited by the Third Circuit in *Wyndham Worldwide* does not create a private right of action. *See Glover v. Loan Sci., LLC*, No. PWG-19-1880, 2020 WL 3960623, at *3 (D. Md. July 13, 2020) ("[T]he Federal Trade Commission Act does not provide a private right of action."); *Burger v. Healthcare Management Sol., LLC*, No. RDB-23-1215, 2024 WL 473735, at *8 (D. Md. Feb. 7, 2024) (same). Whittman has failed to state a claim under the federal consumer protection laws.

### D.  Supplemental Jurisdiction

With his federal claims dismissed, Whittman's only remaining claims are state law claims. They are: breach of contract, tortious interference with contractual relations, intentional infliction of emotional distress, a violation of the MCPA, negligent infliction of emotional distress, and violation of Maryland's public accommodations statute. The Court does not have original jurisdiction over these state law claims. Under 28 U.S.C. § 1367(c)(3), "[d]istrict [c]ourts may decline to exercise supplemental jurisdiction over a claim . . . [where] the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). The Court declines to exercise supplemental jurisdiction over the state law claims.

When, as here, a case has been removed from state court on the basis of federal question jurisdiction and the Court dismisses the federal claims, the Court may remand the remaining state law claims. *See Harless v. CSX Hotels, Inc.*, 389 F.3d 444, 448 (4th Cir. 2004). MGM's Rule

12(b)(6) motion to dismiss Whittman's state claims is denied. The state law claims are remanded to the Circuit Court of Prince George's County for further proceedings.

### III.    Conclusion

Whittman's motion to remand is denied. MGM's motion to dismiss under Rule 12(b)(3) is denied, and MGM's motion to dismiss under Rule 12(b)(6) is granted in part and denied in part. Whittman's federal claims are dismissed without prejudice. His remaining state law claims are remanded to the Circuit Court for Prince George's County. A separate order follows.

Date: October 28, 2024

Deborah L. Boardman
United States District Judge